Next case we'll hear is United Marketing v. Fowler. And Ms. Green, whenever you're ready, take your time, get your papers. Nancy Green You lost part of your audience, and this case must not be quite as interesting as the last one. Angie Fowler No, for some reason contract dispute is not as sexy as First Amendment. I don't get that. Nancy Green This is even worse than a contract. This is a garnishment. Mr. Green You know what? No, we'll try to make it interesting. Angie Fowler I am sure your honors will for me. Thank you. Mr. Green All right. We'll hear from you. Nancy Green May it please the Court, my name is Nancy Green of the firm of Ackerman Brown in Fairfax, Virginia. I represent the appellants Angie and Tim Fowler. When you strip off all the noise, the case is really simple. United Marketing Solutions wants to receive $200,000 on a $100,000 judgment, and that's not equitable. And as a result, the district court abused its discretion when it denied the Fowlers Rule 60B, 5 and 6 relief. Mr. Green Which 60B relief is not granted very often. Angie Fowler Correct, your honor. It does require unusual circumstances, which is what we have here. Specifically, both under 5 but also under 6. The Fowlers entered into a contract with Reese. Reese in 2010 had obtained a judgment against United Marketing. United later obtained a judgment against Fowlers in the district court in Alexandria. The Fowlers then negotiated with Reese to purchase a portion of the judgment Reese had against United. Mr. Green That's what you say, but that doesn't seem like what the agreement says. Angie Fowler The agreement, the way it was phrased, was because at the time the parties were laboring under a mistake of fact that the Fairfax court had actually issued the garnishment at the time. But in construing that contract, you have to look both at the intent and the words used. The contract specifically said that the credit, the release credit, which is what the district court called it, was being purchased for $10,000 to satisfy the Fowler judgments. Mr. Green Why didn't they just buy it? People end up factoring agreements all the time. You're using a garnishment for something. You're sort of assuming that by responding to a garnishment, which is just an attachment of an asset, that you can somehow cut out the debtor, in this case United. And they may have some defenses against Reese, but they have a claim against you. And if that amount, which you owed to them, is a legitimate amount, and apparently it is, it's a final judgment, then when that's attached, I think you have to pay that into court. Isn't that the process? And then the court then awards it, but it may not go to Reese. It may go to Reese if there's, I mean, Reese attached it, attached the judgment, but then it goes into court, and at least United has to have some say in this. Your Honor, the reason why I don't believe that is accurate in this particular case is at the time Fowler and Reese struck their deal, the garnishment had not actually issued. What difference does that make? I'm sorry, Your Honor. What difference does that make? I mean, you were asked two questions, one of which was, why didn't they just buy this judgment? It might not have changed the legal standing, but I think for your argument to be that we bought part of this judgment doesn't, I don't find support for that in the plain language of this contract. They did not set it out as a purchase and assignment because at the time they had the mistaken belief that the Fairfax court had actually issued the garnishment. And as part of resolving the garnishment, they bought that release credit that specifically under the terms of the agreement they were then using to satisfy the judgment. So your clients were involved in being mistaken in what they were doing and the way they worded that contract? Correct. And then your clients who made a mistake there, then they decided to take a chance on the wording of that being sufficient to put them in the position they want to be in. And they may have made a mistake in that because they didn't actually buy the judgment. And so why is it an abuse of discretion for the court not to give you the relief from the mistakes and the efforts that your clients undertook? Why is that an abuse of discretion? Because under the 60 v. 6 factor, by failing to grant them relief from the judgments, they allowed United to obtain a windfall to the detriment of the Fowlers and put United in the position of being able to receive $200,000 worth of benefit on the $100,000 judgment. Yeah, but that's of your doing. Not United's doing. No, I mean of your client's doing. I think your client came very close to making misrepresentations to the court. I sort of viewed this as very manipulative going around United who had an interest in all of this. I mean United had a judgment against you, which it could be satisfied, and you somehow wanted to get rid of that judgment by giving $10,000 to some third person and having them reduce the judgment, their judgment. But that doesn't do anything to your judgment, and they didn't agree to it. They own the judgment against you, and all Reese had a right to is to attach the proceeds. But Reese could not have gotten that judgment. Now, it seems to me in order for Reese to get what you owed to United, they would have to go to United. Two points to that, Your Honor. Reese had the absolute right to do whatever it wanted with its judgment against United. Of course, and they're going to be stuck. You know something? They're going to be stuck. They had a claim for $220,000 or whatever it is, and now it's down to $160,000 or whatever the amount is. Are they unhappy? Is Reese unhappy? No. Okay. No. They're stuck with it, but that doesn't mean you get rid of your judgment. But what happened between Reese and the Fowlers is no different than any of the other credit purchasing and debt purchasing that goes on in the commercial market. Hold it. Hold it. The debt is owed from you to United, right? The debt I'm referring to that was involved in the transaction is the debt United owed to Reese. That's fair enough. You guys can have that transaction. So Reese now has to collect less, and you paid $10,000 for that. But you still owe United your judgment, and your judgment is how much? After the $10,000 credit, the district court gave it about $96,000. $96,000. Why don't you still owe that? Because, again, you go back under the unjust enrichment. There is no requirement. First of all, unjust enrichment. Hold it. Unjust enrichment, you're talking about you gave United a benefit vis-a-vis Reese, but that didn't involve your judgment. They have a judgment against you for $106,000. Your Honor, respectfully, it does involve ours because the reason that we gave the benefit to United was to Why not? They didn't agree to it. But they didn't have to. Sure. They own it. But I don't have to agree when Citibank sells my credit card debt to Barclays. It's no different in this situation. Except it's not your debt. They own the debt. They own the judgment against you, and they didn't give it up. Correct. But what we acquired as a result of the transaction with Reese was that release credit of $111,766.90. That's vis-a-vis Reese. Right. And that's the binding. That's okay. Reese gave up all that money for $10,000. And I'm not sure I would have even given you a $10,000 credit because it seems to me, I think it's equitable, but it seems to me that you still owe $106,000 to United. How did you affect that judgment? That Reese then tendered, Reese then stepped into our shoes and tendered their offsetting credit against our judgment. How did they step into your shoes? By providing the credit, the release credit to United. That's what we negotiated. That's a different judgment. That's Reese's judgment against United. And you got that one reduced, and they get the benefit of that. Correct. But that doesn't mean that they have to give up their judgment against you. But they got the release credit specifically for that. They took no action. But they didn't agree to that. Well, but they did because they took no action once they were made aware of the credit to stop Reese from filing those certificates of partial satisfactions, from asking those to be vacated. They wouldn't have to. Reese gave that up voluntarily. That's a good transaction. Reese's reduction of its judgment against United is reduced. And that's on the records. And they said we're satisfied. They filed a satisfaction to the extent of whatever you guys agreed. But that doesn't affect the judgment that United has against you. It does because they knowingly accepted the benefit of that agreement, which put them in an unjust enrichment situation. Let me ask this much. Do you think United is unjustly enriched to the amount of $90,000? If they're allowed to collect against me. I'm saying what it stands right now. Yes, Your Honor. Well, why aren't you unjustly enriched to $90,000, your clients? Why aren't they in the same boat? They got $100,000 worth of benefits for $90,000. Why are not your clients just as unjustly enriched as you claim United is? Because the benefit to United was the same whether we paid $1, $10, $10,000, half a million dollars for the credit. No, but I'm asking why you aren't unjustly enriched to $90,000. Because in your theory, you get $100,000 worth of benefit for $10,000, right? Correct. And that is the same exact situation that United is in right now, isn't it? You claim they're in. They get $90,000 at the cost of $10,000. But isn't that exactly where your clients are? No, Your Honor. Why is that not so? Because they negotiated with Reese. They may have negotiated, but the net result, why isn't that an unjust enrichment to them? Because there is nothing in the law or in equity that allows a creditor who has taken the assignment of someone else's debt or obtained a credit on that debt to be limited to what they paid for that debt. I'm just saying, but why isn't that an unjust enrichment? Just because they negotiated it? Yes. But why couldn't United have negotiated that same deal and save themselves $90,000? I would only have to speculate. It may be that Reese would not have given it to them at the discount. It may be because of any number of factors, but the truth is they never tried. I fail to see how you'd link up the negotiations you had, and you had a right to buy the Reese's judgment, just like you're saying. But that has no connection. The fact that United was benefited in that transaction you had with Reese has no relationship to the judgment, independent judgment, they have on a different debt against you. And the only way you can get rid of that judgment is to have that satisfied some way with an agreement with United. But, Your Honor, under that example, then at no point would any debtor ever be able to buy a debt of their creditor. You bought the Reese debt, right? Well, it says you bought the Reese debt. Well, let's assume it. Let's assume it. You bought the Reese debt, and then you mark that satisfied. You gave a great benefit to United. What if you gave them a half a million dollars? That still doesn't get rid of their judgment against you. But it was satisfied because they were offset against the other judgment. Why? Because when X owes Y, we offset. It's just a matter of black-letter law. So if you take it that we bought that $111,000 and we owed United $106,000 approximately at the time. Well, let me ask you this hypothetical. In this circumstance, if United had a claim on fraud on the court with respect to the Reese judgment, and they wanted to assert it at some point in time when it was collected, that there was a real fraud, it was all manufactured, that still leaves the judgment they have against you open, and they want to collect it. You can't force them to collapse those two judgments and say that because you paid off some third party without their knowledge, they now have to take that credit. This is actually fairly surreptitious, you know. And then Reese comes into court and said, we were paid the full amount, and they were only paid $10,000. If United had a claim again to vacate the judgment that Reese obtained against them approximately 18 months before their transaction, then that claim also would have been... No, you took care of that. My suggestion to you is you took care of that, and you benefited United when you took care of that. But your benefit tonight, you can't claim that because you benefited them in some other transaction. They, therefore, have to reduce their judgment against you. But the purpose of that benefit is expressly in the agreement, which is to use that credit... But they didn't participate in that agreement. But they didn't have to, is our position, because the nature of that transaction was akin to the sale and assignment of that debt. You didn't buy that debt, actually. You just satisfied it to a limited amount. And that's the way it appears on the court records. All right. You do have some rebuttal, and we'll hear from Mr. McDonald. Thank you, Your Honor. May it please the Court. Patrick McDonald from the law firm of Cameron McEvoy in Fairfax for the Appleby United Marking Solutions. And Your Honors have touched on most of the points I would make. Let me ask. Had, in fact, the appellants bought that judgment, could they have used it to offset what they owed you? No, and I think Judge Niemeyer has stated that succinctly. I didn't ask what he stated. I asked you. I think in that case, there are procedures that may have allowed them to do that. But in this case, they didn't purchase it. I didn't say that. That's not my question to you. You're changing it. If they had bought the judgment, could they have used that judgment to satisfy, you know, the Reese judgment in their favor against your client? Could they have used that as an offset on what they owe you? I don't believe they could have, Your Honor. Okay. Why couldn't they have? They couldn't do that, Your Honor, because, as Judge Niemeyer said, there are two separate judgments, and our judgment is not affected by the agreement they have with Reese to purchase a judgment against us. Can anybody buy it? And use it against you? Yes, Your Honor. In the open market, entities can buy judgments. So then under what circumstances could somebody have bought the Reese judgment against you and then try to use that to satisfy a debt they owed you? Well, I think, Your Honor, in order to do that, they'd have to bring it before the court. Bring it before the court and do what? And bring it before the court and ask for some sort of relief. What does that mean? Your Honor, I think in this case, Your Honor, that you've expressed. I didn't say anything about this case. I'm asking you about law. Could somebody buy a judgment, a creditor's judgment against a person, and then use that? Is there any provision in the law for a debtor of that first party to then use that judgment they bought to offset? I'm not aware of one, Your Honor. Well, it would depend on who the parties are, wouldn't it? Yes. I mean, what we've got here is a garnishment. Yes, Your Honor. And it's not a proceeding where United is attempting to enforce its judgment against the Fowlers. Yes. A separate proceeding. So if that were the case and the Fowlers had bought this judgment, maybe you could have a set-off action in equity between United and the Fowlers. But in the garnishment setting, now answer Judge Shedd's question. The Fowlers have bought this judgment instead of whatever you all did in this agreement. How does that affect the garnishment, or does it? It doesn't affect the garnishment. In the garnishment setting, we are entitled as the judgment debtor to be a part of any sort of transaction. And I think the Harkins case speaks to this, which is the judgment creditor and the garnisher do not step into the shoes of the judgment debtor. And in that case the – It's not a liability situation in garnishment. It's an attachment of assets. Yes, Your Honor. In the hands of third persons. And the attachment of assets brings it into the court, and the court then satisfies the judgment. Yes, Your Honor. And in that limited circumstance, the judgment debtor's judgment or role as a judgment creditor in another matter is not affected. It's a limited proceeding in which the only issue at hand is whether or not the attached assets. Let me follow up on a question that Judge Shedd was asking. Yes, sir. I have always understood that a set-off or an offset has to be asserted as a counterclaim in an action and adjudicated by a court. Yes, Your Honor. And the question is, if you don't have a court action, you just have two judgments, and somebody buys a judgment, can a person having a judgment against them and having a judgment in his favor apply a set-off at law? Or would he have to go to court to have that? Your Honor, in that case, I believe there may be a – they may be filing for an injunctive relief of some kind, but I believe they would have to go to court in that situation. And in this case, Your Honor, I think the point is that the judgment was not purchased. There was a release credit that frankly – But the point is, we do have a court case. That's what's in front of us is a court case, so court is involved. Yes, Your Honor, absolutely. So now your point is, do you win because of the wording of the agreement between the Fowlers and Reese, or do you win on some principle of law that would attain even if they had properly worded their agreement to buy the debt? Well, Your Honor, I think it's both in this case, in that the wording of the agreement clearly does not do – All right, well, let's skip over that then. If they had in fact – tell me why in this situation that – is it a procedural defect? If they had properly bought that debt that United owes to Reese – I think other parties are right – United owes to Reese, and they bought that debt from Reese, why couldn't they assert it against – in some fashion – against your – what they owe you? Because in this procedure, Your Honor, that's not what's before the court on the garnishment. In that case, Your Honor, no matter what the agreement said, no one was allowed to step into the shoes of – But in a garnishment proceeding, can somebody – I don't know who the garnishee is and all that, but the person that owes money, can they not say, but Your Honor, we should not owe them because we have in essence already paid them $100,000. They get to say that somewhere somehow, don't they? Your Honor, I think they could say that somewhere, but – Why the heck wouldn't they say it? The court – wouldn't the court want to know? I'm just asking, wouldn't the court want to know? I am not going to endorse proceedings or any way in an order to make these people pay a second $100,000 if in fact legally they have already paid $100,000. You're telling me why can't we look at that issue because why? Well, I think you can't look at that issue in the garnishment setting. We can't look at it because – I think you cannot look at it in the garnishment situation specifically because the issue before the court on the garnishment is whether the assets attach to that particular debt. The garnishment proceeding is merely an attachment of assets. It's not an assessment of liability. Yes, Your Honor. Right? Yes, Your Honor. And so when the judgment debtor has assets in the hands of third persons, you can attach those assets and bring them to court, and there's not an adjudication of liability. The garnishee who has those assets confesses the assets or not. If he has assets, pays them into court, and then the court adjudicates whether that reduces the judgment. Yes, Your Honor. There's no adjustment of liability at all. That's correct, Your Honor, and that's exactly what should have occurred here. The garnishee had options, and he availed himself of none of those options. The garnishee would have had to, once he paid into court under the garnishment, would have had to file a proceeding, which may or may not have been consolidated with that, in order to bring the issue before the court. Yes, Your Honor. If they wanted to bring this issue before the court, they could have availed themselves of that had they followed the proper procedures of the court, and there are three options available, and Judge Lee quoted In re Lam in citing those, and 801-501 that there are options, and that is pay the money into the court, file an answer stating what you owe, or showing up on the day of the return to state what you owe. None of that occurred here. So the garnishee and the judgment creditor went outside of the procedure and did what is not allowed by the Virginia Code plainly, and that is why the agreement, whatever it is, they did not have the right. Why is that not allowed by the Code? Because the garnishment proceeding gives the garnishee very limited directives. But why can't they do what they did? What they did was illegal, or it just doesn't have any effect. It has no effect, Your Honor. It's not illegal. Well, you just said they could not do it. They cannot do it to the extent that it affects United's judgment. No, no, no. They can do it. It just doesn't have any legal effect. Yes, Your Honor. That's what you mean. Yes, Your Honor. It has no legal effect as against the foul judgments. But they can do it. They can do it. They have the freedom to contract for whatever they like. It doesn't mean the contract has teeth. They didn't even plead the contract in their papers. They just talked about a garnishment. That's right. I'm looking at their memorandum here. It's just the whole garnishment proceeding. They're claiming that they have a right in some garnishment to have more assets set off in respect to their judgment than they paid. And, Your Honor, I think— Theoretically, if they gave $10,000, they confessed to $10,000, they should have put that into court. And I think that's— But they actually had more. They had $106,000. Right. Your Honor, we don't know what they had. Well, they confessed to assets, didn't they? They never filed an answer saying how much money they had. We have no idea how much they had. In fact, we have no idea that the $10,000 was even paid except for the representation by counsel. So you're claiming the other side did this. They took a risk on buying that debt like they did from Reese. They could do that if they wanted to, and whatever it means, it'll mean, but it's not to be used in this procedure, and they didn't properly put what they attempted to do and what credit they should get for that in front of the court. That's correct, Your Honor. And I think that applies equally for both 60 v. 5 and 60 v. 6 relief in this case because they haven't done what they should have done. Well, the 60— The mechanics, you don't need to debate, but her mechanics is that she's basically wanting a judgment that's been satisfied to be recognized, and Rule 60 allows that. Yes, Your Honor, but in this case, and I think Judge— Well, I understand what the—in this case, but I'm talking about the procedural issue. The procedural issue in this case, or in Rule 60 motions generally, is, yes, the court looks at the entire picture. It's under 60 v. 6, we have an equitable proceeding, and— Well, it doesn't—it looks at the entire picture, but it's looking at only the case of United v. Fowler. Yes, Your Honor. There's a judgment there. Yes, Your Honor. And that judgment has the proceeds of the judgment, which is Fowler's money owed to United, has been attached according to Fowler. It was attached by Reese in a garnishment. The—what they attached— Yes, what they attached was the debt owed— The monies, the assets that were payable by Fowler into court on the judgment. Right, so they filed a garnishment to attach certain property, and that's absolutely right. That's what the garnishment was for. However, once they went past that step, they proceeded to do that which they cannot do. They didn't go past that step. They didn't even involve the court, and they didn't even involve the— That's my point, Your Honor. —United, which is the debtor. That's my point, Your Honor, is that they did not— Is there any information in this record why Reese would take Fowler's $10,000 to satisfy $100,000 and not your $10,000? There's no information on that, on the record on that, Your Honor, and frankly, I don't know, and I can't speculate as to why Reese would even take this deal in the first place, why they would accept $10,000. Well, I suspect there were no assets lying around, and Fowler says, I don't have any more, and here, you can have it. That's the most you're going to get out of this. I suspect that's possible, but we just don't know on this record what happened. We weren't a party to that discussion at all. But that would have to be a belief by Reese that you don't have the money. Right. That's what would drive a deal that Reese would have to believe your clients don't have the money. Yes, Your Honor. That would, of course, drive that deal. Well, it would be Fowler, too, because Fowler owed Reese $106,000, and they attached that judgment. They could get the full $106,000 from Fowler, but they agreed to take $10,000. That's right, and they agreed to take $10,000, and now, as a result of that, the Fowlers are now, in fact, unjustly enriched to the extent of $96,000. No, they haven't been unjustly enriched. The court gave them $10,000 credit. They gave them the $10,000 credit. But you think they get that other, if the court were to allow it, they would be unjustly enriched. Yes, Your Honor. That's what you mean. Yes, Your Honor. That's my point. The way they're claiming against you, they'd be in the same shoes. Exactly, Your Honor, because they would have paid $10,000 not only to get out of the garnishment and not have to fork over more than $10,000 through the garnishment action, through proper action, but also to get out of the judgment to which, you know, another $106,000 judgment entirely. So, in essence, they're avoiding two court proceedings by paying a mere $10,000 on a $106,000 judgment. And looking at the scope... Why was the $10,000 stricken from the contract? I have no idea, Your Honor. I've never seen a copy of the contract that had the amount in it. I've never seen a check that had the amount in it. And I would submit that it was the Fowler's burden at the lower court to prove extraordinary... More than that, it seems to me it indicates an arrangement that is borderline bona fide. Your Honor, I don't want to speculate on it. Fine. That's all. Fine. Thank you. All right. You got any more? Your Honor, I guess, just briefly, I'd say on this enrichment, the elements simply weren't met as well. The elements weren't proven at the lower court. The elements of unjust enrichment being a benefit, knowledge of the benefit, and importantly, a reasonable expectation of payment given the equities of the situation. I think in this case, none of those elements have been met. Reese is the one conferring a benefit here, not the Fowler's. We had no knowledge of the benefit when it was conferred. We were simply not a party, and I think that that's been established. And also, given the equities of the situation, there's no reasonable expectation of payment given this situation. If Your Honors have nothing further... All right. Thank you. Thank you. Ms. Green? Thank you, Your Honors. Why was the $10,000 redacted from the agreement? It... The... Essentially an error on what I sent into the court. The first time we sent the contract to United back in early November, sorry, mid-November, we struck the numbers... Why? Because I didn't want to fight with them as to that we only should get $10,000 credit. When I provided to them in December, I provided it with the numbers, and when we were making copies to submit the motion... You didn't want to disclose it to them because what? They might upset the apple cart? They didn't want it? Because, frankly, it wasn't... We didn't believe it was any of their business how much we had paid for their judgment. That's probably clever by too far. When we provided it to them on December 1st, we provided them with the numbers in it, and we... There's never been a dispute. I haven't seen it in the record. The only place I saw it is you guys agreed before the district court. Correct, and that's because I... When I made the copies, I submitted... Because you were concerned that they knew what you actually paid for, they would have an argument that you weren't entitled to what you were claiming? No, because I thought it was irrelevant to what we were claiming because the benefit was the full $111,000. They happened to be the judgment creditor in your debt, and you didn't want to tell them what you actually paid on that judgment. Again, I thought it was irrelevant, and it goes back to... Well, it's a dicta case in the bankruptcy court, the N. Ray Hooper. The court there found that whether... Again, it was a 10 cent on the dollar sale. It didn't matter that it was a 10 cent on the dollar sale. You know, I... I just want to express a concern I have. I thought that this case came very close to misrepresenting things to the court. I believe that there was disclosures to the court that a full $121,000 was paid in satisfaction, that the $10,000 agreement was blanked out so no one would know it. United was not incorporated in this, even though it was their asset that was being attached. Their asset was the judgment that you owed to United. It was being attached. That was never disclosed to the court. There was a confession of assets. The amount of money wasn't put into the court. It was all pretty clever, and maybe way too clever. I don't know. I just wanted you to understand that I had that. I was troubled by that. With respect to Reese's release, which is the one that said they were paid $111,000, we obviously had no input on that as to why... Why not? I thought that's what you required them to do. I didn't... We didn't say to represent to any court that they got $111,000 because they'd only gotten $10,000. They leased the $111,000, which is what they were supposed to do. Well, you put that together where they say they were paid $111,000, and then you have your contract, which has been redacted to exclude the $10,000, and you have no confirmation or information presented to the judgment creditor and the judgment debtor. United. United is a judgment debtor with respect to Reese and a judgment creditor with respect to you, and they're the center of all of this, and you're sort of going around them and trying to tell them, enriching them in a fashion that enriches you without telling them. And not telling the court. That's the big thing, because there was an attachment involved. Right. The garnishment ultimately was dismissed with no order of payment as well. Who dismissed the garnishment? Reese. That was part of your deal with them, right? They... No, we didn't specify that they had to dismiss it without having the order of payment entered. Well, if the garnishment was dismissed, then that almost eliminates any possibility of you getting anything, because you still owe the $106,000. That's not been satisfied. Well, again, going back to Judge Shedd's question, to the extent that we had bought the judgment, we would have been entitled to assert the offset. You didn't allege that. You alleged the garnishment in your papers. We alleged the contract construction and under Ames, that the effect of that contract was, in fact, the assignment or transfer of the debt, or that Reese had stepped into our shoes and satisfied our debt by tendering the credit. You can't do that with garnishment. You don't step into somebody's shoes. You just confess assets. And I understand that, Your Honor, but again, at the time that the Reese agreement was signed, the garnishment was not effective. Well, why did you plead it? That's all you plead? You didn't say, we bought a judgment and we now own it. What you said is there was a garnishment. I've read your papers from top to bottom and you're talking about a garnishment and that you settled the garnishment proceeding. That's what you said. Isn't it? It is. We also argued for relief under the equitable considerations in the extent that... Well, you got $10,000 and I think the court didn't have to do that. All right. Thank you, Your Honor. Anything further? No, Your Honor. Okay. We'll come down to recouncil and take a short recess.
judges: Paul V. Niemeyer, Dennis W. Shedd, G. Steven Agee